# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE/TACOMA

| | |
|---|---|
| ORGANO GOLD INT'L, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>AUSSIE RULES MARINE SERVICES, LTD., a foreign corporation; GREG NORMAN, a Florida resident, and ABG-SHARK, LLC, a Delaware limited liability company,<br><br>Defendants. | NO. 2:18-cv-00108-JLR<br><br>**DECLARATION OF NORM PERRETT IN SUPPORT OF RESPONSE TO MOTION TO DISMISS OR TRANSFER VENUE** |

I, Norm Perrett, declare:

1. I am over the age of eighteen years and am otherwise competent to testify and make the following statements based upon my personal first-hand knowledge.

2. I am the Senior Vice President of International Operations for the Organo Gold group of companies, which includes the plaintiff in this action. In such capacity, I have access to the business records of Organo, including communications from corporate headquarters in British Columbia, corporate records held at of our global satellite offices, as well as information relating to Organo's unique business plan, data regarding the markets Organo operates in, marketing efforts, product designs, acquisitions, available inventories, and general logistics regarding the fulfillment of purchase orders.

DECLARATION OF NORM PERRETT
(2:18-cv-00108-JLR) - 1

3. Organo's headquarters are located in Richmond, British Columbia, which is a suburb of Vancouver. This office is where I primarily work from, although I reside in Calgary, Alberta. This office is where the majority of Organo's business records are kept, and where the majority of Organo's executives work out of, including Bernardo Chua (CEO), Awie Kardiman (CFO), and Patrick Miranda (General Counsel), even though many reside outside British Columbia. This is also where our former VP Finance, Jamie Foo, worked. Others such as Holton Buggs (Chief Visionary Officer, and former VP of Sales) and Chris Pair (former managerial consultant to the Board) are/were only present there intermittently, as they work from home outside of British Columbia.

**Organo's Presence in the State of Washington**

4. Our U.S. counsel's office is located in Seattle, Washington, across the street from the Courthouse. Based on my previous experience meeting with our counsel, this is less than a 2.5 hour commute from our Richmond headquarters (including the border stop).

5. Organo maintains a satellite office and warehouse in Ferndale, Washington. The Ferndale office services Organo's U.S. operations and fulfills sales orders. We selected Ferndale because of its proximity to our Richmond, B.C. headquarters, which is less than 45 minutes away (again including the border stop), and because of the ability to receive imports of Organo's products from Asia through the Port of Seattle.

6. As a result of our Richmond and Ferndale offices, Organo has substantial cross-border contacts with Washington State, and it is quite common for staff from headquarters to commute to Ferndale, and vice-versa.

7. Furthermore, Organo holds an extraterritorial corporate registration in Washington State, maintains a valid Washington business license, a Washington food handling and warehousing license, and maintains good standing with the Washington Department of Labor and Industries.

8. Additionally, Organo ties all agreements with its U.S. distributors to Washington,

DECLARATION OF NORM PERRETT
(2:18-cv-00108-JLR) - 2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

by having them enter into an Independent Distributorship Agreement ("IDA") which is governed by Washington law and includes a clause specifying that venue for suits will be in either Whatcom County or this Court. As a result, Organo has routinely litigated such disputes with its distributors in Washington. As discussed below, part of the overall agreement reached with the Greg Norman group made them a high ranking U.S. distributor which required them to execute Organo's standard IDA.

9.  Organo employs 10 people at its Ferndale office. These employees are principally responsible for managing U.S. logistics in coordination with Organo's headquarters. This includes receiving product shipments from our suppliers across the globe (China, Malaysia, E.U., USA and Canada). Those products included the Greg Norman "Brew-Kup," "Espresso" product-lines, and other branded products ("Branded Products"), as well as associated distributor business-tools (sales aids) and promotional materials. The Ferndale office is responsible for product inventory, collation, assembly, inspection & quality assurance, as well as all corresponding logistics. Essentially, when a purchase order is received from the U.S., the Ferndale office verifies the order, assembles the applicable products, packages, ships the products to the corresponding delivery address, and reports this data to headquarters to help track sales. The Ferndale office works in conjunction with our Events team, and coordinates all of the logistics for product and event supplies for events held in the US in a calendar year, and, where necessary, provides support to events in other countries as well. This included the two events Mr. Norman attended, discussed below.

10.  That said, the Ferndale office is *not* just a distribution center. Rather it also acts as our surrogate headquarters for the U.S. The Ferndale office is where generally all official correspondence from regulators in the United States is sent. This includes correspondence from the IRS, various States' departments of revenue, the Washington Department of Financial Institutions (Securities Div.), the Washington Department of Labor and Industries, the Puerto Rico Department of Agriculture, all manner of legal proceedings, and any other documents

DECLARATION OF NORM PERRETT
(2:18-cv-00108-JLR) - 3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

related to Organo's business operations in the U.S.

11. Organo has a strong presence in the state of Washington due to its close proximity to the Richmond office and the presence of its satellite office in Ferndale. During the period of the Contracts, Organo had between 4,096 and 5,833 distributors registered in the state of Washington.

**The Negotiations with the Greg Norman Group**

12. The relationship between Organo and the Greg Norman group originated from Jennifer Chessler, a distributor with Organo in October, 2012. Ms. Chessler is related to David Chessler, an executive within the Greg Norman group. Mr. Chessler was introduced in late 2012 to Jennifer Chessler's supporting up-line Diamond distributor (a senior level/rank of Organo distributorships), Mr. Barry Cocheu, to whom he made known his association with Greg Norman and his position within the Greg Norman group. Various informal discussions were then had between the two culminating in an invitation by Greg Norman for Mr. Cocheu and Mr Buggs (then Organo's V.P. of Sales) to attend the 2013 PGA Masters Tournament in Augusta, Georgia, as his guests. From there it was suggested that a mutually beneficial relationship could form between the Greg Norman group and Organo to leverage the Greg Norman brand within the consumer-direct sales industry.

13. Over the course of the next few months, negotiations were had between David Chessler and others on behalf of the Greg Norman, and Mr. Buggs, Ms. Foo and Mr. Chua on behalf of Organo. All of these communications were held electronically. At no time during this negotiation period was there any further physical meetings between the parties, and, at no time was Mr. Norman ever directly involved in the subsequent negotiations with Organo. Similarly, Organo did not travel to Florida to engage in negotiations.

14. The Greg Norman group presented themselves as experts in the business of leveraging the Greg Norman brand. Although it previously operated under a different name, the Greg Norman Company is the parent company of a dozen other companies and owner of a

DECLARATION OF NORM PERRETT
(2:18-cv-00108-JLR) - 4

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

portfolio of trademarks across a wide range of products including apparel lines, golf course designs, wineries and restaurants, supposedly worth millions of dollars.

15. A general framework agreement was reached between the parties which called for something more than just a simple endorsement of Organo's existing products. The Greg Norman group wanted a specific product line developed which they would lend their business expertise to help market within the consumer-direct sales model.

16. The basic agreement was originally drafted by Mr. Miranda (Organo's in-house counsel). It called for both a base level of compensation and a royalty tied to sales of the new product line, complimentary product, control over the quality and image of the new product-line, and a high ranking Organo distributorship (Emerald or above). In exchange, the Greg Norman group was to provide the requisite license to use the Greg Norman name and identity, personal services from Greg Norman to promote and endorse Organo and the Branded Products, and the professional services and expertise of his management team in the creation and execution of a business plan and the marketing of the product line.

17. The Greg Norman group declined to accept this draft agreement, preferring instead template agreements prepared by their lawyer. They forwarded to Organo preliminary versions of the two agreements. These were in turn marked up by Mr. Miranda upon consultation with Ms. Foo and Mr. Chua at Organo's headquarters, and returned electronically to the Greg Norman group for comments. Except for a few minor changes, the Greg Norman group rejected Organo's proposed revisions. Thus, the actual form and substantive terms of these documents became the *formal* agreement, with the remaining, unaddressed terms left entrusted to the parties to carry out in good faith.

18. Thereafter, Organo enrolled the Greg Norman group's appointee, David Chessler, as a new Distributor in the Company with the rank of Emerald. Mr. Chessler executed the corresponding IDA on June 3, 2013, and a copy of that IDA is attached hereto as Exhibit 1. Mr. Chessler entered approximately 20 purchase orders, generating approximately $31,000 in

DECLARATION OF NORM PERRETT
(2:18-cv-00108-JLR) - 5

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

commissions. Those orders were processed and shipped from Ferndale.

19. With respect to the Contracts themselves, I note that the address listed for Organo corresponds to a former registered address of the company in Las Vegas, Nevada. Organo does not conduct business operations from that address.

20. It was incumbent on Organo to produce the product-line, business and marketing plan, promotional materials, and to handle all of the associated due diligence, sourcing, registrations, and sales support related to the new products. The Greg Norman group for its part, reverted to a role of final approvals only. The contracts afforded them two opportunities to inspect and voice their objections to each Branded Product. Initially, we anticipated this would occur in Ferndale. However, the samples were ultimately arranged, prepared and sent from Organo's Ferndale office.

21. Defendants knew that the products and associated promotional material would be imported into the U.S. through Organo's office in Ferndale.

22. With respect to the new product line, Organo established four new, high-end coffee products under the Brew Kup name in 2013, which were combined into 29 different Organo product packs, offered for sale in the U.S., all of which were actively marketed in the State of Washington with Greg Norman's image, signature, or referenced him personally. Organo sold over 900 such product-packs in Washington, which generated over $160,000 in revenue. Mr. Norman and his companies received their share of revenue from these sales. Defendants anticipated and consented to this marketing and sales in Washington.

23. Beyond this, Organo was responsible for designing, sourcing and distributing all distributor aids, business tools, promotional materials, and derivative products associated with the product lines – these included things like single serve brewing machines, calendars, apparel, banners, chinaware, videos, magazines, advertisements, etc. Those materials were prepared and sent from the Ferndale office.

24. Aside from providing their "final approvals," the Greg Norman group provided

DECLARATION OF NORM PERRETT
(2:18-cv-00108-JLR) - 6

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

little support or promotion for the Branded Products. Mr. Norman made two appearances at Organo events: our annual convention in Las Vegas during September 2013, and the Brew Kups product launch in San Antonio during March 2014. The rest involved some photographs, and two video recordings played in conventions throughout Europe and North America.

25. As a result, Organo became seriously concerned about Defendants' performance under the contracts in 2015. Greg Norman became increasingly unavailable to attend corporate events and unwilling to help create new promotional materials. This was most notable during the summer when Mr. Norman spent a week in Washington State to broadcast the U.S. Open at Chambers Bay for Fox Sports. Despite the fact that Organo had a strong presence in Washington and its executive team were less than three hours away, Organo was unable to obtain Mr. Norman's cooperation to even meet during the Open, attend an event, or otherwise promote the Branded Products. It became clear that the Greg Norman group perceived this arrangement as a mere receivable.

26. This prompted Organo to hire consultant, Chris Pair, who along with the incoming CFO, Awie Kardiman, sought to identify ways of either getting the Greg Norman group to deliver what was promised or otherwise renegotiate the Contracts. I was also involved in this process.

27. In August 2016, the contracts were amended based on more promises made by the Greg Norman group. This document was prepared by the Greg Norman group, and I signed on behalf of Organo.

28. Unfortunately, little changed over the course of the next year. Worse, Organo received correspondence in March 2017, from Authentic Brands Group LLC, ABG-Shark LLC, and Greg Norman on behalf of the "Greg Norman Company," revealing that Defendant ABG-Shark LLC acquired all of the intellectual property and related assets of the Greg Norman brand. We considered this a default under the Contracts.

29. Finally, I can confirm that none of the persons substantively involved in this relationship with the Greg Norman group on behalf of Organo are situated in Florida. Also, none

DECLARATION OF NORM PERRETT
(2:18-cv-00108-JLR) - 7

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  of the records or other potential evidence in this matter that Organo controls is situated in Florida.

2  I declare under penalty of perjury under the laws of the State of Washington that the
3  foregoing is true and correct.

4  DATED this 30th day of March, 2018, in Calgary, Alberta, Canada.

By: _____
Norm Perrett

5881/006/505868.1

DECLARATION OF NORM PERRETT
(2:18-cv-00108-JLR) - 8

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

# Exhibit 1




# Organo Gold International, Inc.

5505 Hovander Road, Ferndale, WA 98248 USA
Toll Free: 1 (877) 674-2661 • Fax: 1 604 288 5488 • Email: support@organogold.com • www.organogold.com

## INDEPENDENT DISTRIBUTOR APPLICATION USA

IDA-US-e

### Application Information     (*) Mandatory Fields

**\* OG Distributor ID#**: 1000865919

### Personal Information

- **\* First Name**: David
- **MI**:
- **\* Last Name**: Chessler
- **\* Phone**:
- **\* Mobile**: [redacted]
- **Fax Number**:
- **\* Email Address**: david[redacted]
- **\* Date of Birth (mm/dd/yyyy)**: [redacted]

### Billing Address

- **\* Number & Street**: [redacted]
- **Address Line 2 (Suite or Apartment no.)**: Suite 950
- **\* City**: Sarasota
- **\* State**: Fl
- **\* Zip Code**: 34236
- **\* County**: Sarasota

### Shipping Address — LEAVE BLANK IF THE SAME AS BILLING ADDRESS

- **\* Number & Street**: Same

### Co-Applicant Information

(blank)

### Enrolling Sponsor

(blank)

*Enrolling Sponsor (mandatory only for sponsor or placement correction requests)*

### Your OG Login and Replicating Website Information (Please Choose)

- **\* Login/Website address**: greatwhiteshark .organogold.com
- **\* Password**: [redacted]

**FOR DISPLAY ON YOUR REPLICATING WEBSITE**
- **\* First Name**: David
- **\* Last Name**: Chessler

### Distributor Agreement (Please Read and Sign)

This is a two-sided application. I/We have carefully read and agree to abide by the terms and conditions on both sides of this Application and the Organo Gold Policies and Procedures and Compensation Plan. I/We understand that I/We have the right to terminate my/our Organo Gold independent business at any time, with or without reason, by sending written notice to the Company at the above listed address.

**Applicant's Signature**: [signed]
**Date**: 01/01/2014

**Director of Administration and Distributor Services**: Shella Chua

PLEASE EMAIL, MAIL OR FAX THIS APPLICATION AND AGREEMENT TO ORGANO GOLD WITHIN 48 HOURS OF COMPLETING IT. IF EMAILED OR FAXED IN, YOU MUST SEND BOTH THE FRONT AND BACK OF THE AGREEMENT. PLEASE FIND THE ADDRESSES ON THE TOP OF THIS FORM.

## Independent Organo Gold Distributor Application and Agreement Terms and Conditions

*As used throughout these terms and conditions, "Agreement" collectively refers to the Organo Gold Independent Distributor Application and Agreement, Policies and Procedures, Marketing and Compensation Plan, and any other document incorporated by reference in the aforesaid. These documents, in their current form, and as may be amended by Organo Gold at its sole discretion, constitute the entire contract between Organo Gold and the Organo Gold Distributor. No other representation, promise, or agreement, shall be binding on the parties unless in writing and signed by an authorized officer of Organo Gold.*

1. I certify that I am at least 18 years old (or of contractual age in my state of legal residence) and that all information I provided on this Application is accurate. I understand Organo Gold requests my personal tax identification number solely for the purpose of reporting income to the Internal Revenue Service. Under its right of contract, Organo Gold maintains the right to decline my application if I do not provide a valid tax identification number.

2. I understand that I am not required to make any product purchases in exchange for the right to distribute Organo Gold products pursuant to this Agreement, with the exception of a required Business Kit (except in North Dakota), which is non-commissionable, and provided at cost.

3. I understand that Organo Gold does not accept initial applications from business entities. Once my personal application is accepted, I will have the option to add a business entity to my account in accordance with the Policies and Procedures.

4. I understand that as an Organo Gold Distributor: a) I am granted the non-exclusive right to offer for sale Organo Gold products and services in accordance with the Agreement, b) I have the right to enroll persons in Organo Gold, and c) If qualified, I have the right to earn commissions pursuant to the Organo Gold Compensation Plan.

5. I agree to abide by the Organo Gold Code of Conduct as detailed in the Organo Gold Policies and Procedures.

6. I agree to present the Organo Gold Marketing and Compensation Plan and Organo Gold products and services as set forth in literature that is officially produced by Organo Gold.

7. I agree that as an Organo Gold Distributor I am an independent contractor, and not an employee, partner, legal representative, or franchisee of Organo Gold. I understand and agree that I will be solely responsible for paying all expenses incurred by myself, including but not limited to travel, food, lodging, secretarial, office, long distance telephone and other expenses. I UNDERSTAND THAT I SHALL NOT BE TREATED AS AN EMPLOYEE OF ORGANO GOLD FOR ANY PURPOSE. Organo Gold is not responsible for tax withholding, and reserves the right to refuse to withhold or deduct from my bonuses and commissions, if any, FICA or taxes of any kind, even if requested or agreed to by me in order to comply with any governmental order of backup withholding. I understand I am responsible to pay all applicable federal and state taxes and/or license fees, including FUTA and state unemployment and workers compensation taxes that may become due as a result of my activities as an Independent Distributor.

8. If eligible, I will be compensated for the products I sell and those products sold through my sales organization. Organo Gold never compensates for the mere act of sponsoring. The sale of products to end consumers must be emphasized in all presentations.

9. I understand that Organo Gold's program is built upon retail sales to the ultimate consumer. I am entitled to purchase product for my own personal or family use, and understand that Organo Gold prohibits the purchase of product or large quantities of inventory solely for the purpose of qualifying for bonuses or advancement in the marketing program. By placing subsequent product orders, I certify that I sold at least 70% or more of all products that I previously purchased. Products certified as sold under this 70% rule are not eligible for repurchase.

10. I have carefully read and agree to comply with the Organo Gold Agreement. I understand that I must be in good standing, and not in violation of the Agreement, to be eligible for bonuses or commissions from Organo Gold. I understand that these Terms and Conditions, the Organo Gold Policies and Procedures, or the Organo Gold Marketing and Compensation Plan may be amended at the sole discretion of Organo Gold, and by submitting this application I agree to abide by all such amendments. Amendments shall be binding immediately after notification is released. The continuation of my Organo Gold business or my acceptance of bonuses or commissions shall constitute my acceptance of any and all amendments.

11. The term of this agreement is one year (subject to prior cancellation for inactivity pursuant to the Policies and Procedures). If I fail to annually renew my Organo Gold business, or if it is canceled or terminated for any reason, I understand that I will permanently lose all rights as a Distributor. I shall not be eligible to sell Organo Gold products and services nor shall I be eligible to receive commissions, bonuses, or other income resulting from the activities of my former downline sales organization. In the event of cancellation, termination or non-renewal, I waive all rights I have, including but not limited to property rights, to my former downline organization and to any bonuses, commissions or other remuneration derived through the sales and other activities of my former downline organization. Organo Gold reserves the right to terminate all Independent Distributor Agreements upon 30 days notice.

12. I may not assign any rights or delegate my duties under the Agreement without the prior written consent of Organo Gold. Any attempt to transfer or assign the Agreement without the express written consent of Organo Gold renders the Agreement voidable at the option of Organo Gold and may result in termination of my business.

13. I understand that if I fail to comply with any of the terms of the Agreement, Organo Gold may, at its discretion, impose upon me disciplinary action as set forth in the Policies and Procedures, up to and including the termination of my Distributorship. If I am in breach, default or violation of the Agreement at termination, I shall not be entitled to receive any further bonuses or commissions, whether or not the sales for such bonuses or commissions have been completed.

14. I represent and warrant that my participation as an Organo Gold Distributor does not breach, violate, or otherwise interfere with any current agreements, past agreements, or surviving clauses of previous agreements, into which I have entered with any other multi-level marketing, direct sales, or other business venture.

15. I understand that my participation as an Organo Gold Distributor does not restrict my participation in another multi-level marketing or direct sales opportunity, except that I shall not, while participating as an Organo Gold Distributor, or for 12 months after my termination, cancellation, or other separation from the Organo Gold program, participate in any other opportunity that directly competes with Organo Gold in offering ganoderma-based products.

16. I understand and agree that if I elect to participate in another non-competing multi-level marketing or direct sales opportunity, I will maintain separate organizations, independent of one-another, for each such non-competing opportunity.

17. Organo Gold, its parent or affiliated companies, directors, officers, shareholders, employees, assigns, and agents (collectively referred to as "Agents"), shall not be liable for, and I release Organo Gold and its Agents from, all claims for consequential and exemplary damages for any claim or cause of action relating to the Agreement. I further agree to release Organo Gold and its Agents from all liability arising from or relating to the promotion or operation of my Organo Gold business and any activities related to it (e.g., the presentation of Organo Gold products or Compensation and Marketing Plan, the operation of a motor vehicle, the lease of meeting or training facilities, etc.), and agree to indemnify Organo Gold for any liability, damages, fines, penalties, or other awards arising from any unauthorized conduct that I undertake in operating my business.

18. The Agreement, in its current form and as amended by Organo Gold at its discretion, constitutes the entire contract between Organo Gold and myself. Any promises, representations, offers, or other communications not expressly set forth in the Agreement are of no force or effect.

19. Any waiver by Organo Gold of any breach of the Agreement must be in writing and signed by an authorized officer of Organo Gold. Waiver by Organo Gold of any breach of the Agreement by me shall not operate or be construed as a waiver of any subsequent breach.

20. If any provision of the Agreement is held to be invalid or unenforceable, such provision shall be reformed only to the extent necessary to make it enforceable and the balance of the Agreement will remain in full force and effect.

21. This Agreement will be governed by and construed in accordance with the laws of the State of Washington without regard to principles of conflicts of laws. In the event of a dispute between an Independent Distributor and Organo Gold arising from or relating to the Agreement, or the rights and obligations of either party, the parties shall attempt in good faith to resolve the dispute through nonbinding mediation as more fully described in the Policies and Procedures. Organo Gold shall not be obligated to engage in mediation as a prerequisite to disciplinary action against an Independent Distributor. If the parties are unsuccessful in resolving their dispute through mediation, the dispute shall be settled totally and finally by arbitration as more fully described in the Policies and Procedures.

22. The parties consent to jurisdiction and venue before any federal or state court in the city of Ferndale, County of Whatcom, State of Washington, for purposes of enforcing an award by an arbitrator or any other matter not subject to arbitration.

23. Louisiana Residents: Notwithstanding the foregoing, Louisiana residents may bring an action against the Company with jurisdiction and venue as provided by Louisiana law.

24. Montana Residents: A Montana resident may cancel his or her Independent Distributor Agreement within 15 days from the date of enrollment, and may return his or her starter kit for a full refund within such time period.

25. If an Independent Distributor wishes to bring an action against Organo Gold for any act or omission relating to or arising from the Agreement, such action must be brought within one year from the date of the alleged conduct giving rise to the cause of action. Failure to bring such action within such time shall bar all claims against Organo Gold for such act or omission. Distributor waives all claims that any other statute of limitations applies.

26. I authorize Organo Gold to use my name, photograph, personal story and/or likeness in advertising or promotional materials and waive all claims for remuneration for such use.

27. I understand that I cannot, under any circumstances, incur any debt, expense, or obligation on behalf of, or for, the Company.

28. The Company reserves the right to accept or reject any applicant and is under no obligation to offer any reason for rejection. The Company is under no obligation to notify an applicant of an incomplete or faulty application.

29. A faxed or online copy of this Agreement shall be treated as an original in all respects.

30. I understand that I am entitled to cancel participation in the marketing program at any time and for any reason upon written notice to Organo Gold. Following the notification of cancellation or termination, the Company will buy back from a resigning Distributor unused and currently marketable inventory and sales aids purchased from the Company within (1) one year from the date of receipt of merchandise first ordered (no time limit in MA, GA, LA, and WY) at 90% of the Distributor's net cost, less shipping or other appropriate setoffs and legal claims as set forth in the Buy Back provisions of the Organo Gold Policies and Procedures.

**AutoShip Program Enrollment and Payment Authorization.** If you have elected to participate in the optional Autoship Program, the following terms apply:

1. By enrolling in the AutoShip Program I understand that I will automatically receive the items I selected on a monthly basis.

2. I may cancel my AutoShip order at any time and for any reason by submitting a written request to Organo Gold at least 2 business days before the next scheduled shipment of my AutoShip order. I understand that cancellations received less than 2 business days before the next scheduled shipment will become effective the following month.

3. I authorize Organo Gold to automatically withdraw payment for my AutoShip order using the method of payment identified on this Application and Agreement or as I may update in my back office.

4. Organo Gold will only withdraw payment equal to the amount of the products I have selected, plus shipping and processing, and any applicable sales tax.

5. I understand that my products will ship when payment clears. Organo Gold will not be responsible for any qualifications, bonuses, or commissions that are missed as a result of declined payments.

6. Cancellation of my participation in the AutoShip program does not automatically cancel my Organo Gold Independent Distributor Agreement.

20130527

*change of business name...


# Organo Gold International, Inc.

5505 Hovander Rd. Ferndale, WA 98248

## USA DBA Form

OGF_10-011

### Applicant Information (*) Mandatory Fields

| * EIN | * Company (DBA) | * Applicant's Name | * Co-Applicant's Name |
|---|---|---|---|
| 46-[redacted] | DCGW Investment Holdings, LLC | | |

**Billing Address** — * Number and Street: 50 Central Ave, Suite 950
**Shipping Address** — * Number and Street: SAME

Address Line 2 (Suite or Apartment no.):

| * City | * State | * Zip Code | * Country |
|---|---|---|---|
| Sarasota | Fl | 34236 | USA |

| * Daytime Phone | Evening Phone | * Email Address | * Date of Incorporation or Constitution (mm/dd/yyyy) |
|---|---|---|---|
| 9[redacted] | | dr[redacted]m | 01 01 2014 |

### * Enrolling Sponsor

| * Sponsor's OG ID # | * Sponsor's First Name | * Sponsor's Last Name |
|---|---|---|
| | | |

### * Placement (Select one)

[ ] Automatic Placement   [ ] Left   [ ] Right

### Ownership

#### Owner 1

| * Social Security Number | * Name | % Ownership | * Owner Since (mm/dd/yyyy) | * Driver's License Number |
|---|---|---|---|---|
| [redacted] | David Chessler | | 01 01 2014 | |

**Billing Address** — * Number and Street: [redacted]
**Shipping Address** — * Number and Street: Same

Address Line 2: Sui[redacted]

| * City | * State | * Zip Code | * Country |
|---|---|---|---|
| Sarasota | Fl | 34236 | USA |

| * Passport Number | Country of Issue | * Email Address | * Date of Incorporation or Constitution (mm/dd/yyyy) |
|---|---|---|---|
| | | [redacted]m | |

#### Owner 2

| * Social Security Number | * Name | % Ownership | * Owner Since (mm/dd/yyyy) | * Driver's License Number |
|---|---|---|---|---|
| | | | | |

**Billing Address** — * Number and Street:
**Shipping Address** — * Number and Street:

| * City | * State | * Zip Code | * Country |
|---|---|---|---|
| | | | |

| * Passport Number | Country of Issue | * Email Address | * Date of Incorporation or Constitution (mm/dd/yyyy) |
|---|---|---|---|
| | | | |



# Organo Gold International, Inc.

5505 Hovander Rd. Ferndale, WA 98248

## USA DBA Form

### Representative Agreement (Please Read and Sign)

☐ Organo Gold International Inc. (Organo Gold or the Company) recognizes that an Independent Representative may have legitimate reasons to do business as a sole proprietorship, partnership or corporation and Organo Gold will consider converting the Independent Representative who is a person or household entity to a legal entity which is controlled entirely by the current and good-standing Independent Representative (the "Legal entity").

By submitting this DBA Form, the Independent Representative agrees to the following, as an amendment to its Agreement with the Company:

1. The Independent Representative must submit the Company's DBA Form, duly completed with a copy of the Legal Entity's constituting documents (for example, articles of incorporation) and such other supporting documents requested by the Company and that all such information shall be true and accurate. The acceptance by the Company of the DBA Form will have the effect of amending the Independent Representative's Agreement with the Company. The Company however reserves the right to withhold acceptance of the DBA Form, in its sole discretion.

2. The Independent Representative acknowledges that the acceptance of the DBA Form by the Company does not relieve the Independent Representative from being personally liable towards the Company for the performance and respect of all of the obligations and undertakings contained in the Agreement which include the P&P, of an Independent Representative by the Legal Entity and that notwithstanding the conversion to the Legal Entity, the person or household members who applied for the conversion of their Organo Gold business to the Legal Entity, as the case may be, will remain personally liable for all acts and omissions of the Legal Entity in its obligations towards the Company for the duration of their ownership of the Legal Entity.

3. The Independent Representative acknowledges that the Legal Entity will not receive any recognition at any Organo Gold meetings or events. If the Legal Entity is entitled to recognition, the persons or household members listed as owners on this form will be recognized in place of the Legal Entity.

4. If the Legal Entity is dissolved, the owners must immediately notify the Company. The owners may continue to operate the Organo Gold business.

Under no circumstances can the ownership of the Legal Entity be transferred, in whole or in part, to any other person without following the Company's policies for the sale or transfer of Independent Representative Status.

Applicant's Signature: _[signature]_  Co-Applicant's Signature: _____

Date: 07-18-2014  Date: _____